1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   HANNIBAL ABDULLAH-EL,

11                          Plaintiff,

12              v.

13   BON APPETIT MANAGEMENT
     COMPANY,

14

15                          Defendant.

CASE NO. C15-1946JLR

ORDER GRANTING
DEFENDANT'S MOTION TO
DISMISS

## I.   INTRODUCTION

16

17         Before the court is Defendant Bon Appetit Management Company's motion to

18   dismiss.  (Mot. (Dkt. # 19).)  This is an employment case in which pro se Plaintiff

19   Hannibal Abdullah-El sues Bon Appetit for various forms of discrimination and

20   retaliation.  (*See* Compl. (Dkt. # 5).)  Bon Appetit moves under Federal Rule of Civil

21   Procedure 12(b)(6) to dismiss all of Mr. Abdullah-El's claims for failure to state a claim.

22   (*See* Mot.)  Mr. Abdullah-El has filed no opposition to the motion.  (*See* Dkt.)  The court

ORDER- 1

1   has reviewed the motion, the relevant portions of the record, and the applicable law.

2   Being fully advised,[1] the court GRANTS Bon Appetit's motion as set forth below.

3                                    **II.   BACKGROUND**[2]

4           Mr. Abdullah-El began working for Bon Appetit in February 2013 as a food

5   server.  (*See* Compl. Ex. A at 4 ("EEOC Charge").)  He alleges that between July 2013

6   and February 2014 several coworkers behaved inappropriately toward him.  (*See id.* Ex. F

7   at 2-14 ("Compl. to EEOC") at 1-4.)  For instance, he alleges that a coworker once came

8   up behind him and pressed up against him.  (*See id.* at 1.)  Another coworker, Mr.

9   Abdullah-El alleges, called him "honey" and pointed at his buttocks on one occasion.

10  (*See id.* at 2.)  According to Mr. Abdullah-El, he addressed these episodes with the

11  coworkers in question and the behavior did not recur.  (*See id.* at 1-2.)

12          Mr. Abdullah-El also alleges that (1) a third coworker, who appeared to be high on

13  drugs at the time, sniffed in the area of Mr. Abdullah-El's testicles, (2) a manger once

14  stated that "if individuals were going to be harassed . . . then he [the manager] wanted to

15  be included not excluded," and (3) a "shift lead" named Zach tugged on Mr.

16  Abdullah-El's belt loops on one occasion and asked why he was not in proper uniform.

17  (*See id.* at 3-4.)  Mr. Abdullah-El was not sure whether Zach was making sexual

18  _____

19      [1] Neither party requests oral argument, and the court deems it unnecessary for the
    disposition of this motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

20
21      [2] The following facts are taken from Mr. Abdullah-El's 22-page complaint and the
    approximately 980 pages of exhibits attached to his complaint.  (*See* Compl.; Dkt. ## 2 through
    2-11.)  The court has done its best to construe these materials liberally and in the light most
    favorable to Mr. Abdullah-El.  However, the court notes that Mr. Abdullah-El's filings are
22  voluminous and difficult to follow.

ORDER- 2

1    advances or trying to pick a fight.  (*Id.* at 4.)  Mr. Abdullah-El does not allege that any of

2    these individuals ever repeated such conduct and, in fact, he states that the sniffing

3    behavior "never happened again."  (*Id.* at 3.)  Furthermore, he admits that he did not

4    report harassment to Bon Appetit.  (*See* Compl. at 17.)

5           In February 2014, Mr. Abdullah-El informed his manager that his back and ankle

6    hurt due to a prior injury.  (*See id.* at 8-9; Compl. to EEOC at 1.)  He asked for time off

7    from work, which Bon Appetit granted.  (*See* Compl. to EEOC at 1; Compl. at 9.)  Mr.

8    Abdullah-El returned to work several days later but left shortly thereafter, claiming that

9    he required a medical leave of absence.  (*See* Compl. at 9; Compl. to EEOC at 5.)  Bon

10   Appetit asked Mr. Abdullah-El to provide medical documentation to support his leave

11   request.  (*See* Compl. at 9-10 & Exs. C-D; Compl. to EEOC at 5-6.)  Mr. Abdullah-El

12   claims that he provided such documentation.  (*See* Compl. at 4, 9-10, 12.)  Bon Appetit

13   disputes that claim and asserts that Mr. Abdullah-El's absence was therefore unexcused.

14   (*See* Mot. at 3-4; Compl. Ex. D ("5/28/14 Letter").)

15          In late May 2014, after Mr. Abdullah-El had been absent from work for

16   approximately three months, Bon Appetit terminated Mr. Abdullah-El's employment.

17   (*See* 5/28/14 Letter at 1 (informing Mr. Abdullah-El that his employment is terminated

18   for unexcused absence).)  Mr. Abdullah-El responded by filing a charge with the Equal

19   Employment Opportunity Commission ("EEOC").  (EEOC Charge; Compl. to EEOC at

20   1.)  The EEOC investigated Mr. Abdullah-El's charge but declined to pursue the matter.

21   (*See* Compl. Ex. A at 3 ("Right to Sue") (dated 9/22/15).)  Mr. Abdullah-El then filed this

22   lawsuit.  (*See* Compl.; IFP Mot. (Dkt. # 1) (dated 12/10/15).)

1    Mr. Abdullah-El asserts claims for disability discrimination under the Americans

2  with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; failure to accommodate under

3  the ADA; discrimination on the basis of his race, sex, and religion under Title VII of the

4  Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e; retaliation under Title VII;

5  sexual harassment under Title VII; and violation of the Equal Pay Act ("EPA"), 29

6  U.S.C. § 206(d).  (*See* Compl. at 13-18.)  Mr. Abdullah-El also suggests that he has a

7  claim under 42 U.S.C. § 1983.  (*See id.* at 2 ("This is a ***Title VII complaint***, *with title 42*

8  *Section* §1983 *elements also.*") (emphasis in original).)  Finally, he asserts that a "non-

9  existent union" victimized him and failed to represent him.  (*Id.* at 18.)

10    Bon Appetit moves to dismiss all of Mr. Abdullah-El's claims under Federal Rule

11  of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted.

12  (*See* Mot.)  Mr. Abdullah-El has filed nothing in opposition.  (*See* Dkt.)  Bon Appetit's

13  motion is now before the court.

14                                    **III.    DISCUSSION**

15  **A.    Legal Standard**

16    When considering a motion to dismiss under Federal Rule of Civil Procedure

17  12(b)(6), the court construes the complaint in the light most favorable to the non-moving

18  party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir.

19  2005).  The court must accept all well-pleaded allegations of material fact as true and

20  draw all reasonable inferences in favor of the plaintiff.  *See Wyler Summit P'ship v.*

21  *Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  "To survive a motion to

22  dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

1   claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

2   (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus*

3   *VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  "A claim has facial plausibility

4   when the plaintiff pleads factual content that allows the court to draw the reasonable

5   inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

6          The court, however, need not accept as true a legal conclusion presented as a

7   factual allegation. *Id.* at 678.  Although the pleading standard announced by Federal

8   Rule of Civil Procedure 8 does not require "detailed factual allegations," it demands more

9   than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing

10  *Twombly*, 550 U.S. at 555).  A pleading that offers only "labels and conclusions or a

11  formulaic recitation of the elements of a cause of action" will not survive a motion to

12  dismiss under Federal Rule of Civil Procedure 12(b)(6). *Id.*  The court may consider the

13  pleadings, documents attached to the pleadings, and documents incorporated by reference

14  in the pleadings. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing *Van*

15  *Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002)).

**B.      Disability Discrimination under the ADA**

17         In order to prevail on an employment termination claim under the ADA, a plaintiff

18  must establish that (1) he is a disabled person within the meaning of the ADA; (2) he is

19  qualified, that is, with or without reasonable accommodation, he is able to perform the

20  essential function of the job; and (3) his employer terminated him because of his

21  disability. *Kennedy v. Applause, Inc.*, 90 F.3d 1447, 1481 (9th Cir. 1996); *see Mayo v.*

22  *PCC Structurals, Inc.*, 795 F.3d 941, 944 (9th Cir. 2015).  Even if Mr. Abdullah-El has

1   plausibly alleged the first two elements—a subject on which the court expresses no

2   opinion at this time—he fails to plausibly allege the third element.

3      Mr. Abdullah-El alleges that he lost his job after taking a several-month-long

4   leave of absence due to ankle and back pain.  (*See* Compl. at 5, 9-10, 13.)  He alleges that

5   he provided medical documentation to support his leave request and therefore that Bon

6   Appetit's contention that he was fired for failing to provide such documentation is a

7   pretext for discrimination.  (*See id.* at 4-5, 9-10, 12-13.)  In support of this allegation, Mr.

8   Abdullah-El refers the court to March 12, 2014, treatment notes from a physician's

9   assistant ("PA"), whom he refers to as Dr. Tu.  (*See id.* at 4 ("[Bon Appetit claims] that

10  prior to my discharge they . . . reached out to me . . . requesting for me to provide medical

11  certification to support my time away, this was provided (dr. note from Dr. Tu see

12  exhibits K and L)."), 9 ("It is true as seen in *Exhibit B* I provided medical documentation

13  that did not excuse me from work.  However in the medical documentation provided by

14  Dr. Tu (see note from Dr. Tu) ***it states . . . how much time may be needed off from***

15  ***work***."), 12 ("My absence was excused and I did not fail to submit medical

16  documentation, which supported my medical leave of absence (see exhibit . . . page . . .

17  dr. note from Dr. Tu).") (omissions and emphasis in original).)  Mr. Tu, however, found

18  that Mr. Abdullah-El should not have been missing work.  (*See Id.* Ex. K at 14

19  (answering "No" in response to the question "Will the condition cause the patient to miss

20  work?").)  The court cannot plausibly infer from this record that Bon Appetit terminated

21  Mr. Abdullah-El because of a disability.  Accordingly, the court dismisses Mr.

22  Abdullah-El's disability discrimination claim.

**C.     Failure to Accommodate under the ADA**

To prevail on a failure to accommodate claim, a plaintiff must show, among other things, that his employer had notice of his disability and failed to reasonably accommodate him.  *See McDaniels v. Grp. Health Co-op.*, 57 F. Supp. 3d 1300, 1314 (W.D. Wash. 2014).  Mr. Abdullah-El alleges no facts from which the court could infer that Bon Appetit failed to reasonably accommodate him.  (*See also* Compl. at 12 ("I did previously when hired and during my employment mention my ankle injury and pain but didn't request any special accommodation."));  *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1188 (9th Cir. 2001) (explaining that generally the employee must make the initial request for accommodation).  The court therefore dismisses his failure to accommodate claim.

**D.     Discrimination on the Basis of Race, Sex, and Religion under Title VII**

Courts evaluate Title VII discrimination claims using the *McDonnell Douglas* framework.  *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973)).  That framework requires a plaintiff to make out a prima facie case showing (1) that he was a member of a protected class, (2) that he was qualified for the position in question, (3) that he suffered an adverse employment action, and (4) either (a) that similarly situated employees outside the protected class were treated more favorably, or (b) that other circumstances surrounding the adverse action give rise to an inference of discrimination.  *See Cornwell*, 439 F.3d at 1028;  *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603

1  (9th Cir. 2004).  Mr. Abdullah-El fails to allege facts sufficient to show at least the fourth

2  element of this framework.[3]

3        Mr. Abdullah-El alleges that Bon-Appetit failed to promote him, denied him

4  benefits, and terminated his employment because of his race, sex, and religion.  (*See*

5  Compl. at 5, 10, 13, 16-18.)  Yet he provides no factual allegations linking any of those

6  statuses to his termination or any other adverse employment action.  He asserts that he

7  "was denied equal terms or conditions of employment."  (*Id.* at 17-18 (emphasis

8  removed).)  However, that allegation is conclusory and not entitled to a presumption of

9  truth.  (*See also id.* at 13 ("Although [Bon Appetit] alleges my termination did not occur

10  under circumstances giving rise to an inference of discrimination, the termination of my

---

12  ³ In a case that predates the Supreme Court's decisions in *Iqbal* and *Twombly*, the Ninth
13  Circuit held that trial courts should not use the *McDonnell Douglas* framework to evaluate
   discrimination claims at the pleading stage but should instead inquire only whether the complaint
   offers a short and plain statement showing that the plaintiff is entitled to relief.  *See Gilligan v.*
14  *Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997); *see also Swierkiewicz v. Sorema N.A.*, 534
   U.S. 506, 508 (2002) (holding, before *Iqbal* and *Twombly*, that a Title VII complaint need not
15  contain specific facts establishing a *McDonnell Douglas* prima facie case).  Several district
   courts in this circuit have since held that *Iqbal* and *Twombly* impliedly overruled *Gilligan*.  *See*
16  *Borja-Valdes v. City & Cty. of S.F.*, No. 3:14-cv-04168-CRB, 2015 WL 5522287, at *8 (N.D.
   Cal. Sept. 18, 2015) (collecting cases).  Whatever *Gilligan*'s status may be today, *Iqbal* and
17  *Twombly* at least require an employment discrimination plaintiff to plead facts from which the
   court can reasonably infer a causal connection between the plaintiff's protected status and an
18  adverse employment action.  *See, e.g.*, 42 U.S.C. § 2000e(a) ("It shall be an unlawful
   employment practice for an employer-- (1) to . . . discriminate against any individual with
19  respect to his compensation, terms, conditions, or privileges or employment, *because of* such
   individual's [protected status.]") (emphasis added) and *Mayes v. Kaiser Found. Hosps.*, 917 F. Supp.
20  2d 1074, 1079-80 (E.D. Cal. 2013) (citing *Swierkiewicz* but dismissing the plaintiff's
   employment discrimination claims because the plaintiff "provides no meaningful detail
21  suggesting the termination was because of his race or sex").  The fourth element of the
   *McDonnell Douglas* framework pertains primarily to this causal connection.  Thus, the court's
22  analysis concerning the fourth element of the *McDonnell Douglas* framework also applies to the
   more fundamental requirement that Mr. Abdullah-El plausibly plead a causal connection
   between his protected status and an adverse employment action.

1  employment proves exactly that.").)  He also alleges that "***only Hispanic/Latino***

2  ***Americans*** [were] ***hired for management positions***" (*id.* at 10 (emphasis in original)),

3  and that "*Dominique left, I could've stayed @ Cherry Street and worked 7am to 3pm*

4  *shift*" (*id.* at 17 (emphasis in original)).  Those allegations do not give rise to an inference

5  of discrimination because nothing suggests that Mr. Abdullah-El even applied for the

6  positions in question or was treated worse than any similarly situated individual outside

7  his protected class or classes.  *See Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006)

8  (noting that valid comparators must be similar to the plaintiff "in all material respects").

9  As such, Mr. Abdullah-El has failed to state a Title VII discrimination claim, and the

10  court dismisses that claim.

11  **E.     Retaliation under Title VII**

12          "To make out a prima facie case of retaliation, an employee must show that (1) he

13  engaged in a protected activity; (2) his employer subjected him to an adverse

14  employment action; and (3) a causal link exists between the protected activity and the

15  adverse action."  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093-94 (9th Cir. 2008);

16  *Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1026 (D. Nev. 2013) (applying this

17  framework in evaluating a motion to dismiss).  "Essential to a causal link is evidence that

18  the employer was aware that the plaintiff had engaged in the protected activity."  *Cohen*

19  *v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982).  Mr. Abdullah-El's retaliation

20  claim fails because he has not pleaded facts showing a causal connection between

21  protected activity and an adverse employment action.

22

1    Mr. Abdullah-El alleges that Bon Appetit terminated his employment because he

2  filed a charge of discrimination with the EEOC.  (*See* Compl. at 12.)  His EEOC charge,

3  however, came after Bon Appetit's decision to terminate his employment.  (*Compare*

4  EEOC Charge (dated 6/25/14) *and* Compl. to EEOC (same) *with* 5/28/14 Letter

5  (informing Mr. Abdullah-El his employment was terminated).)  Bon Appetit could not

6  have terminated Mr. Abdullah-El's employment in retaliation for his EEOC charge

7  because Bon Appetit could not have known about the EEOC charge before firing Mr.

8  Abdullah-El.  *See Cohen*, 686 F.2d at 796.  Accordingly, the court dismisses Mr.

9  Abdullah-El's retaliation claim.

10 **F.    Sexual Harassment under Title VII**

11    To establish a sexual harassment claim, a plaintiff must show that (1) he "was

12 subjected to verbal or physical conduct of a sexual nature," (2) the conduct "was

13 unwelcome," and (3) the conduct "was sufficiently severe or pervasive to alter the

14 conditions of [his] employment and create an abusive working environment."

15 *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 421 (9th Cir. 2013)

16 (quoting *E.E.O.C. v. Prospect Airport Servs., Inc.*, 621 F.3d 991, 997 (9th Cir. 2010)).

17 The plaintiff must show that "a 'reasonable person' would find [his] work environment to

18 be 'hostile or abusive' and that [he] in fact did so."  *Id.* (quoting *Faragher v. City of Boca*

19 *Raton*, 524 U.S. 775, 787 (1998)).

20    "To determine whether a hostile work environment claim is actionable, [courts]

21 consider all of the circumstances, which 'may include the frequency of the discriminatory

22 conduct; its severity; whether it is physically threatening or humiliating, or a mere

1  offensive utterance; and whether it unreasonably interfere[d]' with the employee's work

2  performance." *Id.* (alteration in original) (quoting *Prospect Airport Servs.*, 621 F.3d at

3  998-99); *see also Faragher*, 524 U.S. at 788 ("[C]onduct must be extreme to amount to a

4  change in the terms and conditions of employment."); *Prospect Airport Servs.*, 621 F.3d

5  at 998 ("Title VII is not a 'general civility code.'  A violation is not established merely by

6  evidence showing sporadic use of abusive language, gender-related jokes, and occasional

7  teasing.") (quoting *Faragher*, 524 U.S. at 788).  "To hold [his] employer liable for sexual

8  harassment under Title VII, [the plaintiff] must show that [he] reasonably feared [he]

9  would be subject to such misconduct in the future because the [the employer] encouraged

10  or tolerated [a coworker's] harassment." *Brooks v. City of San Mateo*, 229 F.3d 917, 924

11  (9th Cir. 2000); *see also Prospect Airport Servs.*, 621 F.3d at 999; *Swenson v. Potter*, 271

12  F.3d 1184, 1191-92 (9th Cir. 2001) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S.

13  742, 759 (1998)) ("Where harassment by a co-worker is alleged, the employer can be

14  held liable only where 'its own negligence is a cause of the harassment.'").

15       Mr. Abdullah-El fails to adequately allege the third element of a sexual

16  harassment claim.  He alleges that coworkers made several remarks and gestures that may

17  have had sexual overtones.  (*See* Compl. to EEOC at 1-4); *supra* § II.  That conduct,

18  however, is not sufficiently severe or pervasive to alter the terms and conditions of Mr.

19  Abdullah-El's employment. *See, e.g.*, *Westendorf*, 712 F.3d at 421-22.  Moreover, even

20  if Mr. Abdullah-El had adequately alleged harassment by his coworkers, he has offered

21  no factual allegations to show that he reasonably feared he would be subject to such

22

1  misconduct in the future because Bon Appetit "encouraged or tolerated" the harassment.[4]

2  *Brooks*, 229 F.3d at 924; (*see* Compl. to EEOC at 1-4; Compl. at 17 (admitting that he

3  never reported the alleged inappropriate conduct but "did discuss it with the co-workers

4  who committed the offense; and the co-workers aware of the sexual harassment, made a

5  good faith effort to correct the conditions").)  The court therefore dismisses Mr.

6  Abdullah-El's harassment claim.

7  **G.    Equal Pay Act**

8      To establish a prima facie EPA case, the plaintiff must show that employees of the

9  opposite sex were paid different wages for equal work.  *Stanley v. Univ. of S. Cal.*, 178

10  F.3d 1069, 1073-74 (9th Cir. 1999).  The jobs being compared must be "substantially

11  equal."  *Id.* (citing 29 C.F.R. § 1620.13(a) and *Spaulding v. Univ. of Wash.*, 740 F.2d 686,

12  697 (9th Cir. 1984)).  In support of his EPA claim, Mr. Abdullah-El alleges only that Bon

13  Appetit "paid a lesser rate to one sex than to the opposite sex to perform substantially the

14  same work."  (Compl. at 16.)  That allegation is conclusory and not entitled to a

15  presumption of truth.  Mr. Abdullah-El fails to allege facts from which the court can infer

16  an EPA violation.  The court therefore dismisses this claim.

17  //

18  //

19

20      [4] The court acknowledges that an employer's liability is evaluated under a different
    framework when the harassing employee is a "supervisor."  *See Vance v. Ball State Univ.*, ---
    U.S. ---, 133 S. Ct. 2434, 2439 (2013).  Mr. Abdullah-El alleges that a supervisor once said that
21  if individuals were going to be harassed, he (the supervisor) wanted to be included.  (*See* Compl.
    to EEOC at 2-3.)  This single remark does not constitute actionable harassment; therefore, the
22  court declines to consider whether Bon Appetit could be liable for the conduct of an alleged
    supervisor.

**H.    Section 1983**

Mr. Abdullah-El suggests that he may have a claim under 42 U.S.C. § 1983.  (*See* Compl. at 2 ("This is a ***Title VII complaint,*** *with title 42 Section* §1983 elements also.") (emphasis in original).)  To establish a Section 1983 claim, the plaintiff must show "both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011) (citing *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) and *Am. Mfrs. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)).  "The 'under color of law' requirement under § 1983 is the same as the Fourteenth Amendment's 'state action' requirement."  *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928 (1982)); *see also Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974) ("The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment.").  Mr. Abdullah-El alleges no facts from which the court could infer state action, and the court therefore dismisses his Section 1983 claim.

**I.    Union Allegations**

Mr. Abdullah-El also confusingly alleges that a non-existent union victimized him and failed to represent him.  (*See* Compl. at 18 ("***I was also almost a victim of a non-existent union that didn't exist during my time of employment and Union Representation which also was non-existent*** . . . . ***There was no Union at the time of my employment*** . . . .") (emphasis in original).)  He admits, however, that he was not a member of a union and did not request union representation.  (*Id.* ("*I . . . was not a*

1  *member of a Union at the time of my employment and was not entitled to, nor seeking*

2  *representation in a Union which was non-existent at that time. I . . . sought no assistance*

3  *of any so-called Union . . . .*") (emphasis in original).)  The court finds nothing in the

4  record from which to infer a plausible claim related to a union.  Accordingly, the court

5  dismisses any claim based on Mr. Abdullah-El's union allegations.

6  **J.     Leave to Amend**

7          As a general rule, when a court grants a motion to dismiss, the court should

8  dismiss the complaint with leave to amend.  *See Eminence Capital, LLC v. Aspeon, Inc.*,

9  316 F.3d 1048, 1051-52 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)).  The policy

10  favoring amendment is to be applied with "extreme liberality." *Id.* at 1051.  In

11  determining whether dismissal without leave to amend is appropriate, courts consider

12  such factors as undue delay, bad faith or dilatory motive, repeated failure to cure

13  deficiencies by amendments previously allowed, undue prejudice to the opposing party

14  by virtue of allowance of the amendment, and futility of amendment.  *Foman v. Davis*,

15  371 U.S. 178, 182 (1962).  The Ninth Circuit has further instructed that a district court

16  should not dismiss a pro se complaint without leave to amend unless "it is absolutely

17  clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v.*

18  *Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Schucker v. Rockwood*, 846 F.2d

19  1202, 1203 (9th Cir. 1988)).

20          In light of these principles, the court concludes that leave to amend is appropriate

21  here.  Although Mr. Abdullah-El's complaint fails to state any plausible claims for relief,

22  the court cannot say at this time that "it is absolutely clear" that Mr. Abdullah-El could

1    not cure the identified deficiencies by amendment.  If Mr. Abdullah-El chooses to amend

2    his complaint, the court instructs him to consider the deficiencies in his original

3    complaint that the court has discussed above.  Failure to cure those deficiencies may be

4    interpreted as an indication that further amendment would be futile.  In addition, the court

5    cautions Mr. Abdullah-El that an amended complaint acts as a complete substitute that

6    "supersedes the original" complaint.  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262-63 (9th

7    Cir. 1992).

8                            **IV.    CONCLUSION**

9            For the foregoing reasons, the court GRANTS Bon Appetit's motion to dismiss

10   (Dkt. # 19) and DISMISSES Mr. Abdullah-El's complaint without prejudice.  The court

11   GRANTS Mr. Abdullah-El fourteen (14) days to amend his complaint.  If Mr.

12   Abdullah-El fails to file an amended complaint within 14 days of the date of this order,

13   the court will dismiss this case without prejudice and without leave to amend.

14           Dated this 3rd day of May, 2016.

15

16

17   _____

18   JAMES L. ROBART
     United States District Judge

19

20

21

22

ORDER- 15